NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| DARRELL MCGHEE, | ) | No. C 06-0744 JF (PR) |
| Petitioner, | ) | |
| vs. | ) ) ) | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| SCOTT KERNAN, Warden, | ) ) | |
| Respondent. | ) ) | (Docket No. 31) |

Petitioner, a California state prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that various errors at his trial resulted in an unconstitutional conviction. In response to an order to show cause, Respondent filed an answer addressing the merits of the petition. Petitioner has filed a traverse.[1] Having reviewed the briefs and the underlying record, the Court concludes that Petitioner is not entitled to relief based on the claims presented and will deny the petition.

///

///

///

---

1. Petitioner filed a motion to extend time to file a traverse. Docket No. 31. The Court accepts the traverse as filed (Docket No. 32), and accordingly Petitioner's motion is GRANTED.

**BACKGROUND**

The charges against Petitioner arose from his coercing at gunpoint a husband and wife to perform sexual acts on each other. A Santa Clara Superior Court jury convicted Petitioner of two counts of assault with the intent to commit rape (Cal. Pen. Code § 220), two counts of forcible oral copulation (Id. § 288a), two counts of residential robbery (Id. §§ 211-212.5), and two counts of attempting to dissuade a witness (Id. § 136.1). People v. McGhee, No. H025498, 2003 WL 23721742, at *1 (Cal. Ct. App. Aug. 23, 2004) ("Op."). The jury found true various sentencing enhancement allegations attached to the sex offenses (Cal. Pen. Code §§ 12022.3, 667.61(a) & (e), 460(a)). Op. at 1. The trial court found true allegations that Petitioner had been convicted of twenty-seven strike offenses and had suffered two prior serious felony convictions (Cal. Pen. Code §§ 667(b)-(I), 667.5(b)). Op. at 1. The trial court sentenced Petitioner to a ten-year determinate term to be followed by an indeterminate term of 250 years to life in state prison. Id.

Petitioner appealed. The California Court of Appeal for the Sixth Appellate District, in an unreported decision, affirmed the conviction. Id. The California Supreme Court denied his petition for review. Pet. at 3. Petitioner has not filed any state habeas petitions regarding this conviction. Id. at 4-5. Petitioner filed the instant federal habeas action in 2006. The Court dismissed the action and entered judgment for Respondent because Petitioner failed to pay the filing fee. Docket No. 7. The Court later vacated the judgment and reopened the case after Petitioner submitted proof of payment. Docket No. 12.

The California Court of Appeal summarized the facts of the case as follows:

> D. and M. are a husband and wife who, at the time of these[] offenses, had recently moved from Canada to a home in San Jose. Around 4:00 a.m. on March 30, 2002, M. was in bed with D. when she heard a loud noise. She woke D. up, and they saw [Petitioner] enter their bedroom through an interior door. [Petitioner] held a flashlight in one hand and what appeared to be a gun in the other hand. [Petitioner] ordered D. and M. to be quiet. D. complied with [Petitioner's] commands to get out of bed and to lie face down on the floor.
>
> [Petitioner] asked M. for her purse. She told him it was on the couch in the living room. He told them not to move, left the room, and returned with the purse. [Petitioner] then retrieved D.'s wallet from the second bedroom. Expressing frustration over the small amount of cash in the purse and wallet, [Petitioner] questioned M. about jewelry. He examined the contents of her jewelry box, which contained only costume jewelry, and took her diamond engagement ring

1    from the top of the dresser.

2    At [Petitioner's] command D. got back into bed. [Petitioner] told D. and M. "don't call the police" or "[t]here would be big trouble." [Petitioner] closed the bedroom door but D. could tell that [Petitioner] was still in the room crouching beside the door. After several minutes D. said, "[S]ir, I see you're still here." After a few more minutes, [Petitioner] stood up and ordered M. and D. to get up and stand on either side of the bed.

Using a disposable camera he had taken from their kitchen, [Petitioner] photographed D. and M. D. was naked and M. had slipped on a housedress. [Petitioner] ordered M. to take off her housedress. D. testified that [Petitioner] then "gave me instructions, I can't remember how he phrased it, my understanding was at gunpoint to go through the motions of having sex with my wife." D. got on top of M. but, as he testified, "could not do anything except make some motions that suggested a foreplay or whatever." [Petitioner] took some more pictures. M. testified [Petitioner] then "grabbed me by the hair and pulled me up and . . . told us to have oral sex."

M. testified that she put D.'s penis in her mouth and that, "While I'm trying to give my husband oral sex, [Petitioner] grabbed me by the hair, pulled me up and said, I don't know how they did it in Canada, bitch, but this is not how you do it here, and pushed me down again[.]" [Petitioner] pointed the gun at M. [Petitioner] touched his own genital area and told M. if she did not "do it right, he was going to go get his partner" and then M. would "have three men to deal with." [Petitioner] took more pictures. D. suggested, "[W]hy don't you tell her what to do rather than telling her she is not doing it right." [Petitioner] told D. to "shut up." He asked M. and D. if they "had a dildo" but they did not respond.

[Petitioner] put the barrel of the gun to D.'s head and said, "[Y]ou have two minutes to come or you're [going to] get it." [Petitioner] began "motioning as if he was going to take his penis out of his pants." M. said, "[W]hy don't you take the computer or the stereo and leave us alone." [Petitioner] again expressed frustration about how little cash was in the house, and asked about their bank accounts. He wanted M. to drive to the bank and withdraw money from the ATM. When he was told M. did not drive, [Petitioner] told D. to go instead. D. testified [Petitioner] told him, "I had ten minutes to come back or else there would be some sort of trouble." D. testified [Petitioner] said "he had this person outside who would be watching me to see where I went to make sure I went where he told me."

D. dressed and left. After determining he was not being followed, he drove to a friend's house and had him call the police. D. went to the bank, made the withdrawal, and returned home.

After D. left to get the money, [Petitioner] told M. he was going to go outside to talk to his partner. He returned, took some pictures of M., and told her not to move or call the police. He left, returned, and left again. By the time D. came back from the bank, [Petitioner] was gone.

Op. at 1-2.

///

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.06\McGhee744.hcruling.md

3

As grounds for federal habeas relief, Petitioner alleges that (1) there is no substantial evidence to support the sex crimes convictions on counts one, two, three and four; (2) he was prejudiced by the rendition of California Jury Instruction ("CALJIC") No. 2.92 because the instruction erroneously suggests to jurors that they may consider a witness's confidence in his or her identification, as expressed at trial, to be a reliable indication of its accuracy; (3) there is no substantial evidence to support the personal gun use enhancement; (4) the trial court imposed consecutive "Three Strikes" sentences in the same proceeding in violation of his Sixth Amendment rights as articulated in Blakely v. Washington, 542 U.S. 296 (2004); and (5) the trial court deprived him of his Sixth Amendment right to effective assistance of counsel when it failed to conduct an adequate inquiry, and failed to appoint independent counsel to assist him in presenting his pretrial motion to substitute attorneys. Order to Show Cause ("OSC") at 3; Pet. at 6-6(G).

## DISCUSSION

**A.    Standard of Review**

This Court will entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the

'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" Id. at 409.  In examining whether the state court decision was objectively unreasonable, the inquiry may require analysis of the state court's method as well as its result. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003).  The standard for "objectively unreasonable" is not "clear error" because "[t]hese two standards . . . are not the same.  The gloss of error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

A federal habeas court may grant the writ if it concludes that the state court's adjudication of the claim "results in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  The court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

**B.    Petitioner's Claims**

    **1.    Substantial Evidence as to Sexual Crimes**

Petitioner contends that there is no substantial evidence to support the sex crimes convictions on counts one, two, three and four, that is, the charges of assault with the intent to commit rape and forced oral copulation.[2]  Pet. at 6-6(A).  Because there was no evidence that

---

2. Petitioner also summarily contends at the very end of his discussion of this claim that "the convictions on counts one, two, three and four abridge [P]etitioner's Fourteenth Amendment

1  "[victims D. and M.] had the specific intent to commit an act of forcible rape or oral copulation
2  on the other, or that either used coercion, force, or threat of force to do so, neither can
3  [Petitioner] be said to have committed any of the 'crimes' charged in counts one, two, three, and
4  four." Id. at 6. As part of this claim, Petitioner contends that California Penal Code section 31,
5  which imposes criminal liability on any person who compels others to commit any crime, may
6  not be used to establish such liability for a specific intent crime, such as the ones Petitioner was
7  charged with committing.³ Id. at 6(A). The state appellate court rejected Petitioner's claim that
8  he may not be held criminally liable pursuant to section 31. Op. at 3-6.

9        As framed by Petitioner, this claim involves a question of state law and not of fact.
10  Petitioner does not challenge whether the jury had sufficient factual evidence to support a
11  conviction, e.g., whether he was present in the house on the night of the crimes, possessed a gun
12  or in fact threatened the victims.⁴ Nor does Petitioner assert that section 31 is unconstitutional.
13  Rather, he asserts that section 31 cannot result in his being liable for the criminal sexual acts.
14  Because this question of criminal liability involves an interpretation of state law, this Court is
15  bound by the state court's interpretation of state law. Bradshaw v. Richey, 546 U.S. 74, 76
16  (2005). The state appellate court, in its direct review of Petitioner's conviction, held as a matter
17  of state law that Petitioner is criminally liable for the underlying sexual acts through California
18  Penal Code section 31. Op. at 4-6. For this Court, that is the end of the matter.

19        This conclusion also applies to Petitioner's related contentions with respect to this issue.

---

right to due process of law and must be reversed." Pet. at 6(A). This contention lacks the necessary specifics of detail and citations to evidence to make a claim suitable for review. Petitioner also appears to conflate this due process contention with his central contentions regarding section 31. Id. at 6(B).

3. California Penal Code section 31 reads in relevant part: "All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission . . . or, who, by threats, menaces, command, or coercion, compel another to commit any crime, are principals in any crime so committed."

4. Petitioner does assert that there is no evidence that he assaulted D. for the purpose of raping him. Pet. at 6(A).

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.06\McGhee744.hcruling.md

For example, Petitioner also contends that (1) there was "no evidence that [the victims] personally used force or compulsion on the other to perform any sex act, and therefore [P]etitioner cannot be vicariously liable for [these alleged] crimes" and (2) that the victims were criminal agents and therefore not, in fact, victims. Pet. at 6(A). As discussed above, Petitioner is criminally liable as a matter of state law for the acts in question.

### 2. Jury Instruction

Petitioner next contends that he was prejudiced by the rendition of CALJIC No. 2.92, which allows jurors to consider a witness's confidence in his or her identification of a perpetrator, as expressed at trial, as a reliable indication of its accuracy. Pet. at 6(B). "[T]he inclusion of the erroneous 'certainty' factor in CALJIC No. 2.92 coalesced with claims of certainty made by [the victims], and thereby unfairly encouraged the jurors to believe the accuracy of their identifications of him . . . [T]hese errors were highly prejudicial, because the defense at trial was misidentification." Id. at 6(C). To support this contention, Petitioner asserts that "it has been established scientifically" that an eyewitness's confidence in his identification of the criminal does not reliably indicate that the witness's identification is accurate.[5] Id. The state appellate court rejected this claim, finding no support in California or federal case law to support Petitioner's contention regarding the unfairness or prejudicial qualities of the subject portion of CALJIC 2.92.

The language at issue, as read to the jury in this case is: "In determining the weight to be given eyewitness identification testimony, you should consider . . . factors which bear upon the accuracy of the witness's identification of the defendant, including . . . [t]he extent to which the witness is either certain or uncertain of the identification." Ans., Ex. A, Vol. 2 at 189.

As with his previous claim, Petitioner fails to state what federal constitutional right allegedly was violated by giving the jury this instruction. Even if he claims a violation of due process, such a claim is without merit. To obtain federal habeas relief for error in a jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the

---

5. Petitioner does not cite, quote, or identify any specific scientific study.

resulting conviction violates due process.  See Estelle v. McGuire, 502 U.S. 62, 72 (1991); Cupp v. Naughten, 414 U.S. 141, 147 (1973); see also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).  The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.  See Estelle, 502 U.S. at 72.  In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process.  United States v. Frady, 456 U.S. 152, 169 (1982) (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977)); Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988).

      Petitioner has not shown that the allegedly ailing instruction so infected the trial that his conviction violated his right to due process.  Identification of the alleged criminal is central to the prosecution's case, and eyewitness testimony is crucially important toward this end.  The jury's function is to determine the credibility of witnesses and, as part of this assessment, to take into account the various factors enumerated in CAL JIC No. 2.92, one of which is the witness's confidence in his assertion.  The Supreme Court has held that a witness's confidence in an identification is a factor tending to indicate credibility.  Manson v. Braithwaite, 432 U.S. 98, 114 (1977).  Rather than asserting a meaningful claim, Petitioner merely voices his dissatisfaction that the prosecution presented witnesses the jury found to be credible.

      **3.**    **Substantial Evidence as to Gun Enhancement**

      Petitioner contends that the prosecution failed to prove that the weapon he used – a Daisy BB gun – "could expel a BB at sufficient speed to cause a serious injury, or to prove that [P]etitioner intended to use it as a bludgeon." Pet. at 6(D).  Accordingly, "the evidence is insufficient to support the [California Penal Code] section 12022.3 enhancements." Id.  The investigating police officer, David Gutierrez, who analyzed the gun itself, testified that "[i]t's a real [BB] gun.  I mean I don't know the condition of it, but it will shoot a [BB]." Ans., Ex. B, Vol. 4 (Reporter's Transcript, 9/20/02) at 160; Op. at 8.  The state appellate court, which "examined the gun itself and considered its size and weight," stated that, "[t]he evidence of [Petitioner's] actions and statements indicate that he could either shoot the BB gun at D.'s head,

in very close proximity to D.'s eye, or hit D. in the face with the gun." Op. at 8. "[Therefore] [s]ubstantial evidence supports the imposition of the enhancement, and [Petitioner] was not deprived of due process." Id.

A reviewing federal court analyzes a state prisoner's allegations of a due process violation based on insufficient evidence under Jackson v. Virginia, 443 U.S. 307 (1979). Under Jackson, the federal court "determines only whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted. Id. at 324.

Section 12022.3 is a sentencing enhancement for persons who use "a firearm or deadly weapon" in the commission of certain crimes. "Firearm" is defined as "any device, designed to be used as a weapon, from which is expelled through a barrel a projectile by the force of any explosion or other form of combustion." Cal. Pen. Code § 12001(b). California courts have determined that, as a matter of law, pellet and BB guns are "capable of inflicting significant injury" and therefore are deadly and dangerous weapons within the meaning of the California Penal Code.[6] People v. Lochtefeld, 77 Cal. App. 4th 533, 535 n.3, 539-40 (2000).

Petitioner's claim is without merit. A rational trier of fact could have found that the BB gun is a device designed to be used as a weapon. The jury found as much based on evidence presented to it through the testimony of Officer Gutierrez, and the state appellate court, in its own review of the facts and of the weapon itself, determined that the weapon was capable of causing injury.

Moreover, it is irrelevant whether the weapon was loaded or whether Petitioner was in possession of ammunition. California courts interpret "use" broadly. "Although the use of a

---

6. "Compressed air or CO2 guns may fire small round pellets, also known as 'BB's,' or larger-diameter pellets (see, e.g., People v. Sherman (1967) 251 Cal. App. 2d 849, 856 [60 Cal.Rptr. 198], which involved a 'CO2 Plainsman .175 pellet gun'). For convenience, we refer to compressed air/CO2 guns that expel projectiles as 'pellet guns.'" Lochtefeld, 77 Cal. App. 4th at 535 n.1.

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.06\McGhee744.hcruling.md

firearm connotes something more than a bare potential for use, there need not be conduct which actually produces harm but only conduct which produces a fear of harm or force by means or display of a firearm in aiding the commission of one of the specified felonies." People v. Masbruch, 13 Cal. 4th 1001, 1007 (2006) (citations omitted).

**4.    Blakely**

Petitioner contends that the trial court imposed consecutive "Three Strikes" sentences in the same proceeding, thus violating his Sixth Amendment rights as articulated in Blakely v. Washington, 542 U.S. 296 (2004).[7] Petitioner asserts that the trial court determined his sentence by relying on facts that should have been submitted to a jury and found beyond a reasonable doubt. Pet. at 6(E).

Petitioner's claim is without merit. First, Petitioner waived his right to a jury trial as to the truth of the prior convictions. Ans., Ex. B, Vol. 7 (Reporter's Transcript, 9/25/02) at 385; Op. at 12 n. 4. Second, Blakely is inapplicable to Petitioner's sentence. As an initial matter, imposing consecutive rather than concurrent sentences does not increase the statutory maximum. Rather, the trial court determined the appropriate sentence for each individual conviction – individual sentencing determinations to which Petitioner does not object to as exceeding the statutory maximum – and decided that these sentences should run consecutively. More significantly, Blakely explicitly does not apply to an increase of a sentence beyond the statutory maximum based on the fact of a prior conviction. 542 U.S. at 341 (quoting Apprendi v. New Jersey, 530 U.S. 466, 490 (2000).

///
///
///

---

7. California's Three Strikes law, which appears in California Penal Code sections 667(b)-(i) and 1170.12, was enacted by the California Legislature and became effective March 7, 1994. The heart of the Three Strikes law is subdivision (e) of section 667, which prescribes increased terms of imprisonment for defendants who have previously been convicted of certain "violent" or "serious" felonies, or "strikes."

### 5. Trial Counsel

Petitioner contends that "[t]he trial court deprived [P]etitioner of his Sixth Amendment right to effective assistance of counsel when it failed to conduct an adequate inquiry and failed to appoint independent counsel to assist [P]etitioner in presenting his pretrial motion to substitute attorneys." Pet. at 6(F). The state appellate court rejected Petitioner's two-part contention, declaring that the record did not demonstrate that the interests of Petitioner and his trial counsel were adverse to each other. Op. at 12. The court also concluded that "there was no conflict of interest requiring appointment of counsel for purposes of making [Petitioner's] motion to discharge appointed counsel." Id.

The facts giving rise to Petitioner's contention were summarized by the state appellate court as follows:

> On September 17, 2002, the trial court ordered a panel of 95 jurors to arrive the next morning. When the court was called to order to begin motions in limine, the court was told that [Petitioner] wished to make a Marsden motion. The court invited [Petitioner] to explain the basis for his motion. [Petitioner] said defense counsel had visited him "approximately three times." [Petitioner] complained that defense counsel had not given him copies of the police surveillance report until that day. [Petitioner] said defense counsel "informed me that she really doesn't have a defense to follow behind whatever decision is made after today...."
>
> Counsel affirmed that she had visited [Petitioner] three times. Counsel said, "[E]ach time that we have discussed the case, I've asked him if he's got an alibi defense, if he's got anything that I should follow-up on or look into, and basically I haven't been provided with any information which I could follow up with, no names, addresses, contact people, he was provided with the police report." Counsel explained that she thought she had given [Petitioner] a copy of the surveillance report, but when [Petitioner] told her he did not have it, she gave him a copy that day. She explained that the surveillance evidence was not presented at the preliminary examination. Counsel said, "[Petitioner] may be upset that I don't have a defense to present, but as I've informed him, I can't create a defense, that isn't my role, my role is basically to take what he can offer me and try to formulate a defense based on the facts that I've been given." The court asked [Petitioner] if he had anything else to say, and he said, "No. Basically that's about it. Just that I only can tell her the truth in reference to any alibi or witnesses that's unknown, I couldn't give that information out, so therefore, I'm left with the detail that is in front of me."
>
> [Petitioner] indicated he might wish to retain private counsel, and the trial court explained that that could not be done "on the eve of trial[.]" The trial court found counsel was providing adequate representation and denied [Petitioner's] motion. [Petitioner] now argues that the trial court failed to conduct an adequate inquiry into the extent of his communication with counsel and the extent of the investigation in his case.

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.06\McGhee744.hcruling.md

11

> The trial court provided [Petitioner] with a sufficient opportunity to explain the reasons for his dissatisfaction. Nothing in his remarks or defense counsel's response warranted further inquiry. Counsel explained that in the three visits she attempted to obtain information to support a defense, but that [Petitioner] had nothing to say that would trigger further investigation. This lack of information from [Petitioner] is not the equivalent of a lack of communication between counsel and [Petitioner]. As for counsel's "passive and defeatist attitude" of which [Petitioner] complains, we consider her comments to reflect a professional's appraisal of the state of the evidence in light of what she knew of the prosecution's case and [Petitioner's] inability or reluctance to provide any information to support a defense. In sum, the record is clear that the trial court provided [Petitioner] with ample opportunity to voice his concerns, and upon considering those concerns and counsel's response, reasonably found them to be insufficient to warrant relieving trial counsel. We find no basis for concluding that the trial court either failed to conduct a proper <u>Marsden</u> inquiry or abused its discretion in declining to substitute counsel.

Op. at 11.

The Ninth Circuit has held that when a defendant voices a seemingly substantial complaint about counsel, the trial judge should make a thorough inquiry into the reasons for the defendant's dissatisfaction. <u>Bland v. California Dep't of Corrections</u>, 20 F.3d 1469, 1475-76 (9th Cir. 1994); <u>United States v. Robinson</u>, 913 F.2d 712, 716 (9th Cir. 1990); <u>Hudson v. Rushen</u>, 686 F.2d 826, 829 (9th Cir. 1982).[8] However, the inquiry only need be as comprehensive as the circumstances reasonably permit. <u>King v. Rowland</u>, 977 F.2d 1354, 1357 (9th Cir. 1992) (record may demonstrate that extensive inquiry was not necessary). The ultimate inquiry in a federal habeas proceeding is whether the petitioner's Sixth Amendment right to counsel was violated. <u>Schell v. Witek</u>, 218 F.3d 1017, 1024-25 (9th Cir. 2000) (overruling earlier circuit precedent that had stated that a habeas court's inquiry was whether the state court's denial of the motion was an abuse of discretion). In other words, the habeas court considers whether the trial court's denial of or failure to rule on the motion "actually violated [the criminal defendant's] constitutional rights in that the conflict between [the criminal defendant] and his attorney had become so great that it resulted in a total lack of communication or other significant

---

8. <u>People v. Marsden</u>, 2 Cal. 3d 118 (1970), requires the trial court to permit a criminal defendant requesting substitution of counsel to specify the reasons for his request and generally to hold a hearing. This California rule substantially parallels the one prescribed by the Ninth Circuit in <u>Hudson v. Rushen</u>. <u>See</u> <u>Chavez v. Pulley</u>, 623 F. Supp. 672, 687 n.8 (E.D. Cal. 1985).

1  impediment that resulted in turn in an attorney-client relationship that fell short of that required
2  by the Sixth Amendment." Id. at 1026.[9]
3    A defendant has no right to be represented by independent counsel at the hearing on his
4  motion to substitute counsel if his counsel does not take a position antagonistic to the defendant.
5  See Stenson v. Lambert, 504 F.3d 873, 888 (9th Cir. 2007) (state court did not unreasonably
6  apply Supreme Court precedent in rejecting claim of right to independent counsel at hearing on
7  motion for new counsel; lines of communication remained open between defendant and second
8  chair attorney, and appointed counsel never stopped preparing for trial and never abandoned
9  client).  Petitioner does not point to any evidence that a conflict existed that resulted in a total
10 lack of communication or other impediment that resulted in a denial of his right to counsel.
11 Rather, the record indicates that trial counsel tried to assist Petitioner, who was largely
12 uncommunicative and offered little or no help toward his own defense.   The record also
13 indicates that the trial court conducted a reasonable inquiry into Petitioner's concerns and
14 addressed them.  Based on this record, the Court cannot say that the trial court erred in denying
15 Petitioner's motion to change counsel.
16   The Court also finds no merit in Petitioner's contention that the trial court should have
17 appointed independent counsel.  Petitioner has no such right unless trial counsel takes a position
18 antagonistic to his.  Stenson, 504 F.3d at 888.  Petitioner has pointed to no evidence that would
19 indicate that this was the state of affairs.

## CONCLUSION

21   Applying the highly deferential standard imposed by AEDPA, this Court concludes that
22 the state court's determination was not contrary to, or an unreasonable application of, clearly
23 established Supreme Court precedent, nor was it based on an unreasonable determination of the
24 facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2).

---

26 9. In determining whether the trial judge should have granted a substitution motion, the
27 reviewing habeas court may consider the extent of the conflict, whether the trial judge made an
   appropriate inquiry into the extent of the conflict, and the timeliness of the motion to substitute
28 counsel.  Daniels v. Woodford, 428 F.3d 1181, 1197-98 (9th Cir. 2005).

1  Accordingly, the Court concludes that Petitioner has failed to show any violation of his federal
2  constitutional rights in the underlying state court proceedings and parole hearing.  The petition
3  for writ of habeas corpus is DENIED.  The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

DATED:  5/15/08

_____
JEREMY FOGEL
United States District Judge